**TREEHOUSE LAW, LLP**
Joseph Hakakian (SBN 323011)
Benjamin Heikali (SBN 307466)
Ruhandy Glezakos (SBN 307473)
Joshua Nassir (SBN 318344)
3130 Wilshire Blvd., Suite 555
Santa Monica, CA 90403
Telephone: (310) 751-5948
jhakakian@treehouselaw.com
bheikali@treehouselaw.com
rglezakos@treehouselaw.com
jnassir@treehouselaw.com

*Attorneys for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAKAYLA MCCANLESS, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ELEEO BRANDS,<br><br>Defendant. | CASE NO.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

Plaintiff Makayla McCanless ("Plaintiff"), on behalf of herself and all others similarly situated, by and through her attorneys, brings this Class Action Complaint against Eleeo Brands ("Defendant" or "Dapple Baby"), based upon personal knowledge as to herself, and upon information, investigation and belief of her counsel.

## INTRODUCTION

1.    This class action lawsuit seeks to challenge Defendant's false and deceptive practices in the marketing and advertising of Defendant's products (collectively, the "Products"). Specifically, the Products include the following Dapple Baby Farms branded Products: (1) Bottle & Dish Soap Fragrance Free; (2) Bottle & Dish Soap Lavender; (3) Bottle & Dish Soap Fresh Citrus; (4) Bottle & Dish Soap Mango Melon; (5) Bottle & Dish Soap Refill Fragrance Free; (6) Bottle & Dish Soap Refill Lavender; (7) Foaming Bottle & Dish Spray; (8) Dishwasher Detergent Packs; (9) All Purpose Cleaning Wipes; (10) On The Go All Purpose Wipes; (11) All Purpose Cleaner Fragrance Free; (12) All Purpose Cleaner Lavender; (13) Baby Laundry Detergent Fragrance Free; (14) Baby Laundry Detergent Lavender; (15) Stain Remover; (16) Pacifier Wipes; (17) Foaming Hand Soap; (18) Breast Pump Wipes; and (19) Breast Pump Soap. A full list of the Products and their respective ingredients is attached hereto as Exhibit D.

2.    Defendant markets its Products to parents and caregivers seeking the safest possible options for their newborns.

3.    Through the prominent "powered by plants" representation on the front of the packaging, Defendant leads reasonable consumers to believe the Products contain only natural, minimally processed, plant-based ingredients. While the word "natural" may not appear verbatim, these plant-based claims serve as a direct proxy for naturalness, creating an expectation that the Products are free from synthetic or heavily processed substances.

4.    Throughout its marketing and advertising, and central to its overall brand identity, Defendant repeatedly characterizes the Products as "plant-based." Further

-1-

reinforcing consumer expectations that the Products are plant-based, minimally processed, and not heavily processed or synthetic.

5.      These expectations are strengthened by additional front-label representations such as "No Harsh Chemicals" and "Hypoallergenic." When considered together with the "powered by plants" claim and Defendant's plant-based branding, these statements reinforce the belief that the Products do not contain synthetic ingredients or heavily industrially processed ingredients.

6.      Defendant's brand image and front-label representations are reinforced by the Products' packaging, which features green-leaf imagery surrounding the "powered by plants" and "Baby Friendly" claims. This intentional use of botanical imagery strengthens the consumer perception that the Products are derived from nature rather than from complex industrial chemistry.

7.      By using botanical imagery and plant-based claims to market Products that contain synthetic and industrially processed ingredients, Defendant engages in greenwashing designed to create the false impression that the Products are purely natural and environmentally pure, thereby attracting consumers willing to pay a premium for such perceived attributes.

8.      Contrary to these representations, the Products contain several synthetic and industrially processed ingredients, as detailed below, including manufactured citric acid, sodium citrate, glycerin, xanthan gum, benzisothiazolinone, and others.

9.      Had Plaintiff and other Class members been aware that the Products contained such industrially processed or synthetic ingredients, they would not have purchased them or would have paid significantly less. Plaintiff and the Class were therefore injured by Defendant's deceptive, unfair, and unlawful business practices under California law.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action filed under

-2-

Rule 23 of the Federal Rules of Civil Procedure in that: (1) there are more than 100 Class members; (2) the parties are minimally diverse, as Defendant is a citizen of a state different from at least some members of the proposed class, including Plaintiff; and (3) the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs. The Products are sold at numerous retail stores and Plaintiff is seeking to represent a nationwide class. Thus, there are over 100 members in the proposed class and the proposed class has different citizenships from Defendant. Plaintiff seeks compensatory and statutory damages, disgorgement and restitution. Plaintiff also seeks punitive damages and attorneys' fees and costs. Thus, Plaintiff estimates that the amount in controversy exceeds $5 million.

11. This Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts in California, or otherwise intentionally avails itself of the markets within California through its sale of the Products and other goods in California, to California consumers. Defendant, on its own and through its agents, is responsible for the distribution, marketing, labeling, and sale of the Products in California, specifically in this county. The Court also has specific jurisdiction over Defendant as it has purposefully directed activities towards the forum state, Plaintiff's claims arise out of those activities, and it is reasonable for Defendant to defend this lawsuit because it has sold deceptively advertised Products to Plaintiff and members of the Class in California. By distributing and selling the Products in California, Defendant has intentionally and expressly aimed conduct at California which caused harm to Plaintiff and the Class that Defendant knows is likely to be suffered by Californians.

12. Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Plaintiff resides in this District and she purchased one of the Products in this District during the statute of limitations period. ///

CLASS ACTION COMPLAINT

**PLAINTIFF**

13.    Plaintiff is a citizen of California and currently resides in Los Angeles, California. In or around July 2025 Plaintiff purchased Defendant's Baby's Bottle & Dish Soap Fragrance Free Product from a Target retail store in Los Angeles, California. Plaintiff also purchased Dapple Baby's Bottle & Dish Soap Product on February 28, 2025, from Amazon.com, as well as on January 12, 2025, from a Walmart retail store in Los Angeles, California, and also purchased Defendant's Bottle & Dish Liquid Soap Refill Product on December 1, 2024, from a Target Retail store in Los Angeles, California. Based on the representations outlined above, Plaintiff reasonably believed that the Products were strictly plant-based, hypoallergenic, and devoid of any harsh or synthetic chemical ingredients. Had she known that this was not the case, she would not have purchased it or would have paid significantly less for it. As such, Plaintiff has been directly financially injured by Defendant's false and misleading marketing and advertising.

14.    Despite Defendant's misrepresentations, Plaintiff would purchase the Products, as advertised, as if they were plant-based, hypoallergenic, and devoid of any harsh or synthetic chemical ingredients. Absent an injunction of Defendant's deceptive marketing and advertising, she will be unable to rely with confidence on Defendant's marketing and advertising of the Products in the future. Furthermore, while Plaintiff currently believes the Products' marketing and advertising is inaccurate, she lacks personal knowledge as to Defendant's specific business practices, and thus, she will not be able determine whether the Products truly are made solely with plant-based, hypoallergenic, and devoid of any harsh or synthetic chemical ingredients. This leaves doubt in her mind as to the possibility that at some point in the future the Products could be made in accordance with the representations on the Products' marketing and advertising. This uncertainty, coupled with her desire to purchase the Products, is an ongoing injury that can and would be rectified by an injunction enjoining Defendant from making the alleged misleading representations.

-4-

In addition, other Class members will continue to purchase the Products under the reasonable, but mistaken, belief that they are composed exclusively of plant-based ingredients, are hypoallergenic, and are entirely devoid of any harsh or synthetic chemicals.

## **DEFENDANT**

15.    Defendant Dapple Baby Farms, LLC is a California corporation with its principal place of business in Los Angeles, California. Defendant sells the Products throughout California, including in this district specifically.

## **FACTUAL ALLEGATIONS**

16.    The market for "clean" and "natural" baby products has grown significantly, with consumers—particularly parents and caregivers—seeking products that are safe, minimally processed, and free from synthetic chemicals. Defendant targets this demographic to gain a competitive advantage by presenting its Products as plant-based and safe for infants.

17.    Consumers value plant-based products for numerous reasons, including perceived benefits of avoiding diseases, attaining health and wellness, helping the environment, assisting local farmers, assisting factory workers who would otherwise be exposed to synthetic and hazardous substances, and financially supporting the companies that share these values.[1] In response to consumers' desire for plant-based products, many companies, including Defendant, have scrambled to manufacture, market, and sell purportedly plant-based products in an effort to gain market share.

18.    Unfortunately, rather than creating the natural, plant-based products consumers desire, Defendant has chosen to "greenwash" its Products to new or expectant mothers, and families with young children, and market them through deceptive labeling and advertising to convince consumers the Products are plant-

---

[1] See generally Plant-Based Personal Care Products, Eternal Spiral Books (Nov. 24, 2018), ments/press-releases/ftc-issues-revisedgreen-guides/greenguidesstatement.pdf (emphasis added).

-5-

based and natural when, in reality, they contain synthetic and highly processed ingredients.

19.     In response to frequent and pervasive greenwashing, the United States Federal Trade Commission ("FTC") created the "Green Guides" to help companies avoid making misleading and deceptive claims. As relevant here, the FTC stated:

> Marketers, nevertheless, are responsible for substantiating consumers' reasonable understanding of "biobased," and other similar claims, such a "plant-based," in the context of its advertisements.[2]

20.     Here, Defendant disregarded FTC guidelines on "Plant Based" claims, opting to manufacture the Products with ingredients that are neither water nor plant, and at times entirely artificial, synthetic, or substantially processed. Thus, Defendant did not fulfill its responsibility to "substantiat[e] consumers' reasonable understanding of ... 'plant-based" advertising claims as reasonable consumers, such as Plaintiff, reasonably believe that "plant-based" Products only contain water or plaint ingredients that have not undergone substantial processing.

21.     Defendant manufactures, distributes, markets, and sells a variety of household cleaning and personal care products under the "Dapple Baby" brand, including the Products challenged herein.

22.     Throughout the Class Period, Defendant has executed a uniform marketing campaign—primarily through the Products' physical labeling—representing that the Products are "powered by plants," contain "No Harsh Chemicals," are "baby friendly," and are "Hypoallergenic" (the "Challenged Representations"). *See examples on the following page.*

---

[2] See 16 C.F.R. § 260 -- Guides for the Use of Environmental Marketing Claims, p. 246, available at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-issues-revisedgreen-guides/greenguidesstatement.pdf.

CLASS ACTION COMPLAINT






CLASS ACTION COMPLAINT







CLASS ACTION COMPLAINT



CLASS ACTION COMPLAINT



23.    These representations, taken individually and collectively, create the net impression that the Products are composed of minimally processed, plant-based ingredients and are free from synthetic substances.

24.    Defendant's brand image and front-label representations are reinforced by the Products' packaging, which features green-leaf imagery surrounding the "powered by plants" and "Baby Friendly" claims. This intentional use of botanical imagery strengthens the consumer perception that the Products are derived from nature rather than from complex industrial chemistry.

25.    Consumers are not scientists. They do not understand the manufacturing process and are not well-versed in the processes involved in obtaining, synthesizing, or preparing various products and their ingredients.

26.    Consumers rely on the manufacturers to honestly label products. When consumers see "plant-based" representations, they perceive the products to the fully plant-based, and not containing any non-plant-based ingredients – whether synthetic, processed, chemically altered, or otherwise unnatural.

27.    Consumers rely on corporate America (and here, on Defendant) to honestly label products such as the Products here under the Challenged

-10-

Representations and chose to buy the "plant-based products", reasonably believing the Products' front labels to be truthful.

28.   By intentionally using the aesthetics of environmental purity to market the Products as natural alternatives, Defendant engages in marketing practices designed to capture a premium 'natural' market share.

29.   Contrary to these representations, the Products contain synthetic and industrially processed ingredients, including but not limited to: benzisothiazolinone, potassium sorbate, sodium benzoate; xanthan gum; manufactured citric acid; sodium citrate (a synthetic derivative of manufactured citric acid); sodium percarbonate; tetrasodium iminodisuccinate; sodium hydroxide, glycerin; polysorbate 20; and ethylhexylglycerin.

30.   Benzisothiazolinone, potassium sorbate, and sodium benzoate are synthetic preservatives not derived from plants.[3]

31.   Additionally, benzisothiazolinone is an established contact allergen. The United States Environmental Protection Agency declared benzisothiazolinone a moderate skin sensitizer, and this ingredient is banned from use in personal care products in Europe.[4]

32.   Similarly, sodium benzoate is a recognized contact allergen known to cause skin irritation, urticaria, and allergic contact dermatitis.[5]

33.   Sodium citrate is a trisodium salt of citric acid, which is synthetically created. Sodium citrate is listed as "synthetic" under 7 C.F.R. § 205.605.

---

[3] https://www.cneasychem.com/benzisothiazolinone-bit-industrial-preservative/; https://www.fbcindustries.com/everything-you-need-to-know-about-sodium-benzoate/

[4] https://dermnetnz.org/topics/contact-allergy-to-benzisothiazolinone

[5] https://pmc.ncbi.nlm.nih.gov/articles/PMC12223916/; https://www.hmpgloballearningnetwork.com/site/thederm/site/cathlab/event/update-benzoates

34.   Sodium benzoate is a synthetic preservative.[6] Sodium benzoate is produced by the neutralization of benzoic acid with sodium hydroxide, or by adding benzoic acid to a hot concentrated solution of sodium carbonate until effervescence ceases. The solution is then evaporated, cooled and allowed to crystalize or evaporate to dryness, and then granulated. It does not occur naturally.[7] Sodium benzoate has been shown to cause DNA damage and chromosomal aberrations.[8]

35.   Xanthan gum is produced through microbial fermentation by bacteria (Xanthomonas campestris) and is classified as synthetic under USDA organic regulations at 7 C.F.R. 205.605(b). It is not a minimally processed plant-based ingredient. A 2012 article in the Journal of Pediatrics noted that the U.S. Food & Drug Administration issued warnings that products containing xanthan gum have been linked to illness and death in infants.[9]

36.   Sodium percarbonate is a synthetic oxidizing and bleaching agent that is industrially manufactured, does not naturally occur in the environment, and is not derived from plants.[10]

37.   Tetrasodium iminodisuccinate, is a synthetic chelating and complexing agent that is industrially manufactured and does not occur naturally in plant form.

---

[6] https://www.ams.usda.gov/sites/default/files/media/P%20Sor%20technical%20advisory%20panel%20report.pdf; http://www.ewg.org/skindeep/ingredient/705989/SODIUM _ BENZOA TE/; http://www.fda.gov/ICECI/EnforcementActions/W arningLetters/20 1 l/ucm274535.htm.

[7] 21 C.F.R. § 184.1733.

[8] N. Zengin et al., The Evaluation of the Genotoxicity of Two Food Preservatives: Sodium Benzoate and Potassium Benzoate, FOOD AND CHEMICAL TOXICOLOGY 763, 764-68 (2011).

[9] Jennifer Beal, MPH et al., *Late Onset Necrotizing Enterocolitis in Infants Following Use of a Xanthan GumContaining Thickening Agent,* 161 THE JOURNAL OF PEDIATRICS 2,354 (2012).

[10] https://stppgroup.com/products/detergent-chemicals/sodium-percarbonate/

38.    A technical evaluation report compiled by the United States Department of Agriculture Marketing Services confirms that sodium hydroxide "is a synthetic substance that is primarily produced through the electrolysis of aqueous sodium chloride (NaCl, brine)".[11]

39.    Glycerin is a chemically engineered humectant produced through industrial-scale reactions (such as transesterification or hydrolysis) involving high heat and catalysts resulting in a substance that deviates from consumer expectations for minimally processed, plant-based products.[12] It is recognized by federal regulations as synthetic. See 7 C.F.R. § 205 .605(6). A technical evaluation report compiled by the USDA AMS Agricultural Analytics Division for the USDA National Organic Program explains that Glycerin is "produced by a hydrolysis of fats and oils" and is listed in the USDA Organic Program's National List as a "synthetic nonagricultural (nonorganic) substance." The same report lists several methods of producing Glycerin, each of which involve numerous steps that include the use of high temperatures and pressure and purification to get an end product.[13]

///

///

///

///

///

///

---

[11] https://www.ams.usda.gov/sites/default/files/media/SodiumHydroxideTR_05082020.pdf

[12] Glycerin Produced by Hydrolysis of Fats and Oils. https://www.ams.usda.gov/sites/default/files/media/Glycerin%20Petition%20to%20remove%20TR%202013.pdf. (last accessed 11/04/2024).

[13] https://www.ams.usda.gov/sites/default/files/media/Glycerin%20Petition%20to%20remove%20TR%202013.pdf

-13-

| Table 2 Processes for producing glycerin by hydrolysis of fats and oils | |
|---|---|
| Lemmens Fryer's Process | Oil or fat is subjected in an autoclave to the conjoint action of heat and pressure (about 100 PSI) in the presence of an emulsifying and accelerating agent, e.g. zinc oxide or hydroxide (sodium hydroxide can be substituted) for about eight hours. The strong solution of glycerin formed is withdrawn and replaced by a quantity of hot, clean and preferably distilled water equal to about one third to one fourth of the weight of the original charge of oil or fat and treatment continued for an additional four hours. The dilute glycerin obtained from the latter part of the process is drawn off and used for the initial treatment of the further charge of oil or fat. |
| Budde and Robertson's Process | The oils or fats are heated and mechanically agitated with water and sulphuric acid gas, under pressure in a closed vessel or autoclave. The advantages claimed for the process are that the contents of the vessel are free from foreign matter introduced by reagents and need no purification; that the liberated glycerin is in the form of a pure and concentrated solution; that no permanent emulsion is formed and that the fatty acids are not discolored. |
| Ittner's Process | Coconut oil is kept in an autoclave in the presence of water at 70 atmospheres pressure and 225-245°C temperature and split into fatty acids and glycerin, both being soluble under these conditions in water. The glycerin solution separates in the bottom of the autoclave. The aqueous solution contains at the end of the splitting process more than 30 percent glycerin. |
| Continuous High Pressure Hydrolysis | In this process a constant flow of fat is maintained flowing upward through an autoclave column tower against a downward counter-flow of water at a pressure of 600 PSI maintained at temperature of 480-495°F. Under these conditions, the fat is almost completely miscible in water and the hydrolysis take place in a very short time. The liberated fatty acids, washed free of glycerin by the downward percolating water, leave the top of the column and pass through a flash tank while the liberated glycerin dissolves in the downward flow of water and is discharged from the bottom of the tower into the sweet-water storage tank. |

40.      Polysorbate 20 is a synthetic ingredient made by the reaction of sorbitol and polyol with ethylene oxide.[14]

///

///

///

///

///

///

///

---

[14] https://cosmetics.specialchem.com/inci-ingredients/polysorbate-20

41.     Ethylhexylglycerin is a synthetic skin-softening agent.[15] Additionally, ethylhexylglycerin is also known to have preservative properties and has been known to cause dermatitis and is therefore classified by studies as a skin allergen.[16]

42.     While Defendant lists "Citric Acid" as an ingredient, it does not use the natural organic acid found in citrus fruits, as approximately 99% of global citric acid production uses *Aspergillus niger* fermentation. [17]

43.     Instead, Defendant utilizes manufactured citric acid ("MCA"), an industrial chemical created through a complex biotechnological process produced through microbial fermentation in industrial vats using a genetically filtered strain of black mold (*Aspergillus niger*) followed by chemical extraction processes involving high temperatures, filtration, sulfuric acid precipitation, and potential solvent residues (including n-octyl alcohol and synthetic isoparaffinic petroleum hydrocarbons per 21 C.F.R. § 173.280). This multi-step industrial process — including sulfuric acid precipitation and solvent use — fits the definition of synthetic under 7 C.F.R. § 205.2, further supporting that MCA deviates from reasonable consumer expectations for plant-based, minimally processed ingredients in baby products. This distinguishes MCA from naturally extracted citric acid from citrus fruits, which is no longer commercially feasible as confirmed by USDA AMS reports and deviates from

---

[15] https://www.paulaschoice.com/ingredient-dictionary/ingredient-ethylhexylglycerin.html.

[16] https://www.mdpi.com/2079-9284/9/2/32#B44-cosmetics-09-00032 (citing Sasseville, D.; Stanciu, M. Allergic contact dermatitis from ethylhexylglycerin in sunscreens. Dermatitis 2014, 25, 42–43; Mortz, C.G.; Otkjaer, A.; Andersen, K.E. Allergic contact dermatitis to ethylhexylglycerin and pentylene glycol. Contact Derm. 2009, 61, 180.); https://www.chemicalbook.com/article/the-performance-and-synthesis-method-of-ethylhexylglycerin.htm.

[17] Iliana E. Sweis, et al., *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series of four case reports,* TOXICOL REP. 5:808-812 (2018), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6097542/

reasonable consumer expectations for plant-based, minimally processed ingredients in baby products.

44.     A technical evaluation report for citric acid compiled by the United States Department of Agriculture Marketing Servies ("USDA AMS") further explains that it is not commercially feasible to use natural citric acid extracted from fruits:

> "Traditionally by extraction from citrus juice, [is] no longer commercially available. It is now extracted by fermentation of a carbohydrate substance (often molasses) by citric acid bacteria, *Aspergillus niger* (a mold) or *Candida guilliermondii* (a yeast). Citric acid is recovered from the fermentation broth by a lime and sulfuric acid process in which the citric acid is first precipitated as a calcium salt and then reacidulated with sulfuric acid."[18]

45.     USDA AMS reviewers have noted that, due to the extensive chemical processing involved in commercial production:

> "[Citric acid] is a natural[ly] occurring substance that commercially goes through numerous chemical processes to get to [its] final usable form. This processing would suggest that it be *classified as synthetic*."[19]

46.     In response to whether the substance is "Natural or Synthetic," USDA AMS reviewers stated: "synthetic."[20]

47.     The Code of Federal Regulations defines a synthetic substance as one "that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that [it] does not apply to substances created by naturally occurring biological processes." 7 C.F.R. § 205.2. The post-fermentation chemical extraction and refinement steps used to produce manufactured citric acid in the Products—including sulfuric acid precipitation and solvent use—fit this definition of synthetic, further supporting that the ingredient deviates from reasonable consumer expectations for plant-based, minimally processed ingredients in baby products.

---

[18] **Exhibit A** at page 6.
[19] **Exhibit A** at page 5 (emphasis added).
[20] **Exhibit A** at pages 4-5.

-16-

CLASS ACTION COMPLAINT

48.  On the following page are images of the chemical process used to create citric acid – a process that is visibly artificial:






49.  The FDA explains that the "Solvent extraction process for citric acid" for food-grade production is accomplished via "recovery of citric acid from conventional Aspergillus niger fermentation liquor … (a) The solvent used in the process consists of a mixture of n-octyl alcohol … synthetic isoparaffinic petroleum hydrocarbons … and tridodecyl amine." 21 C.F.R. § 173.280. These chemical solvents may be used to extract the citric acid in the Products and may leave potential residues.

50.  The FDA has issued warning letters to companies like Hirzel Canning Company and Oak Tree Farm Dairy, Inc., indicating that 'natural' claims on food products may be misleading when containing citric acid due to its manufacturing

-17-

process.[21] While these letters pertain to food and do not define "natural" formally, they illustrate regulatory scrutiny of such ingredients in claims implying minimal processing or the absence of synthetic ingredients.[22] This logic supports that "powered by plants" and similar claims on the Products could mislead reasonable consumers expecting exclusively plant-based, minimally processed ingredients.

51.    While citric acid serves as a flavoring in food, in cleaning products it serves as a synthetic preservative and chelating agent.[23] Regardless of the product category, the synthetic nature of the ingredient remains constant and equally deceptive to a consumer seeking natural alternatives.

52.    By using these ingredients, Defendant has presented heavily processed Products with a plant-based impression. Reasonable consumers do not expect such industrial processing and additives in premium baby cleaning and personal care Products positioned as clean, plant-based alternatives.

53.    Furthermore, Defendant represents its Products as 'hypoallergenic' despite formulating them with known allergens and skin irritants.

54.    Defendant does not qualify its front-label claims with asterisks, percentages, or disclosures, reinforcing the impression that the Products are fully plant-based and composed of natural, minimally processed ingredients.

55.    By using these ingredients, Defendant can reduce manufacturing costs while charging a premium for Products positioned as clean, plant-based alternatives.

56.    Defendant's misrepresentation has caused economic harm to Plaintiff and Class members, who purchased the Products relying on the belief that they were primarily plant-based, minimally processed, hypoallergenic, and free from synthetic

---

[21] *See* **Exhibit B** at page 2 and **Exhibit C** at page 2.
[22] *See also* U.S. International Trade Commission, Synthetic Organic Chemical Index, USCTIC Pub. 2933, at 3-105 (Nov. 1995) (listing citric acid as synthetic).
[23] https://www.webstaurantstore.com/blog/3350/what-is-citricacid. html#:~:text=What%20Is%20Sour%20Salt?,salt%20tastes%20sour%20and%20acid ic.

-18-

CLASS ACTION COMPLAINT

ingredients. Had they known the truth, they would have paid less or not purchased the Products.

57.    As the entity responsible for developing, marketing, labeling, distributing, and selling the Products, Defendant knew or should have known its representations were misleading and that consumers would rely on them.

58.    Plaintiff and Class members have suffered financial injury as a direct result of Defendant's false and misleading representations, receiving Products that are industrially processed, non-hypoallergenic, and contain synthetic ingredients rather than the premium, plant-derived Products advertised.

59.    Therefore, Plaintiff and Class members have suffered financial injury in fact and lost money as a result of Defendant's deceptive practices.

## CLASS ACTION ALLEGATIONS

60.    Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 and all other applicable laws and rules, individually, and on behalf of all members of the following Classes:

**Nationwide Class**

All consumers who purchased any of the Products within the applicable statute of limitation within the United States ("Nationwide Class").

**California Class**

All consumers who purchased any of the Products within the applicable statute of limitation within California ("California Class").

**California Consumer Subclass**

All consumers who purchased any of the Products for personal, family, or household purposes, within the applicable statute of limitations period within California ("California Consumer Subclass") (together with the Nationwide Class and the California Class, the "Classes").

-19-

CLASS ACTION COMPLAINT

61.     Excluded from the Classes are the following individuals and/or entities: Defendant and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

62.     Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or add subclasses before the Court determines whether class certification is appropriate.

63.     Plaintiff is a member of all the Classes.

64.     **Numerosity:** Members of each Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. The precise number of Class members is unknown to Plaintiff but is likely to be ascertained by the Defendant's records. At a minimum, there likely are thousands of Class members.

65.     **Commonality:** There are questions of law and fact common to the proposed class(es). Common questions of law and fact include, without limitations:

   a. whether Defendant's course of conduct alleged herein violates the statutes and other laws that are pled in this Complaint;

   b. whether Defendant's Challenged Representations are materially misleading to a reasonable consumer;

   c. whether the presence of synthetic manufactured citric acid (MCA), sodium citrate, glycerin, benzisothiazolinone, potassium sorbate, sodium benzoate, sodium percarbonate, tetrasodium iminodisuccinate, sodium hydroxide, polysorbate 20, ethylhexylglycerin, and xanthan gum contradicts Defendant's "plant-based" and "natural" labeling;

-20-

CLASS ACTION COMPLAINT

d.  whether Defendant knew or should have known its Challenged Representations were false or misleading;

e.  whether Defendant's uniform deceptive conduct allowed it to charge a price premium for the Products;

f.  whether the measure of damages for the Class is the difference between the price paid for the Products as represented and the actual value of the Products as delivered;

g.  whether Defendant was unjustly enriched by retaining monies from the sale of the Products;

h.  whether certification of each Class is appropriate under Rule 23;

i.  whether Plaintiff and the members of each Class are entitled to declaratory, equitable, or injunctive relief, and/or other relief, and the scope of such relief; and

j.  the amount and nature of the relief to be awarded to the Plaintiff and the Classes, including whether Plaintiff and the Classes are entitled to punitive damages.

66.  **Typicality:** Plaintiff's claims are typical of the other Class members because Plaintiff and all Class members were exposed to the same uniform misrepresentations on the Products' labeling and purchased the Products in reliance thereon. Plaintiff and the members of each Class suffered the same economic injury in that they paid a price premium for the Products and would not have purchased them (or would have paid substantially less for them) had they known that the Defendant's representations were untrue. Plaintiff's claims advance the same legal theories as the claims of the other Class members.

67.  **Adequacy:** Plaintiff will fairly and adequately protect the interests of the proposed Classes as her interests do not conflict with the interests of the members of the proposed Classes. Plaintiff is committed to the vigorous prosecution of this action and has retained counsel competent and experienced in class action litigation. Thus,

-21-

CLASS ACTION COMPLAINT

the interests of the members of the Classes will be fairly and adequately protected by Plaintiff and her counsel.

68. **Predominance:** Pursuant to Rule 23(b)(3), the common issues of law and fact identified in this Complaint predominate over any other questions affecting only individual members of the Classes. The primary issues—whether Defendant's labeling is deceptive and whether the ingredients are synthetic—are common to all Class members and can be proven using common, class-wide evidence. Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a focus on Defendant's uniform misconduct detailed at length in this Complaint.

69. **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of hundreds of thousands of individual claims in separate lawsuits, which would risk inconsistent adjudications. Further, because the damages suffered by any individual Class member are relatively modest in relation to the cost of litigation, the expense and burden of individual litigation make it difficult, if not impossible, for Class members to redress the wrongs done to them.

70. **Declaratory and Injunctive Relief:** Pursuant to Rule 23(b)(2), declaratory and injunctive relief is appropriate in this matter. Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members. Specifically, Plaintiff and Class members continue to be exposed to Defendant's deceptive labeling in the marketplace. Because Plaintiff continues to desire to purchase truly plant-based cleaning products, but cannot currently rely on the truth and accuracy of Defendant's labels, she is at risk of future harm. Unless a class-wide injunction is issued, Defendant will continue to advertise, market, and sell the Products in an unlawful and misleading manner, and members of the Classes will continue to be misled and denied their rights under the law.

-22-

CLASS ACTION COMPLAINT

**FIRST CLAIM FOR RELIEF**
**Violation of California's Consumers Legal Remedies Act**
**California Civil Code § 1750, *et seq.***
**(*For the California Consumer Subclass*)**

71. Plaintiff repeats the allegations contained in paragraphs 1-70 above as if fully set forth herein.

72. Plaintiff brings this claim individually and on behalf of the members of the proposed California Consumer Subclass against Defendant pursuant to California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*

73. The Products are "good[s]" within the meaning of Cal. Civ. Code § 1761(a), and the purchases of the Products by Plaintiff and members of the California Consumer Subclass constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e). Defendant is a "person" as defined by Cal. Civ. Code § 1761(c).

74. Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have." Defendant violated this section by representing that the Products possess the "characteristics" and "ingredients" of being purely plant-based, natural, and hypoallergenic, when they in fact contain synthetic manufactured citric acid (MCA), sodium citrate, glycerin, benzisothiazolinone, potassium sorbate, sodium benzoate, sodium percarbonate, tetrasodium iminodisuccinate, sodium hydroxide, polysorbate 20, ethylhexylglycerin, and xanthan gum.

75. Cal. Civ. Code § 1770(a)(7) prohibits "[r]espresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." Defendant violated this section by representing that the Products meet a premium "standard" of being "powered by plants" and "Hypoallergenic" through the Challenged Representations. In reality, the Products are of an inferior, synthetic standard due to their industrially processed chemical composition.

-23-

CLASS ACTION COMPLAINT

76.    Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By marketing and advertising the Products consist exclusively of plant-based ingredients i.e., natural ingredients, and not delivering Products as such, Defendant has advertised the Products with characteristics it intended not to provide to consumers. As such, Defendant has violated and continues to violate section 1770(a)(9) of the CLRA.

77.    Defendant's misrepresentations were material to Plaintiff and the Subclass. A misrepresentation is "material" if a reasonable consumer would attach importance to it or would be induced to rely on it in making a purchase decision. Here, the Challenged Representations and "plant-based" and "hypoallergenic" nature of the Products was the primary driver of the transaction.

78.    At all relevant times, Defendant has known or reasonably should have known that the marketing and advertising of its Products as plant-based i.e., natural ingredients are false and deceptive, and that Plaintiff and other members of the California Consumer Subclass would reasonably and justifiably rely on these representations when purchasing the Products. Nonetheless, Defendant deceptively advertises the Products as such in order to deceive consumers into believing they consist exclusively of plant-based ingredients i.e., natural ingredients.

79.    Plaintiff and members of the California Consumer Subclass have justifiably relied on Defendant's misleading representations. Because the misrepresentations were uniform and material, reliance may be presumed or inferred on a class-wide basis under California law.

80.    Plaintiff and members of the California Consumer Subclass have suffered injury in fact and lost money. Specifically, they were deprived of the "benefit of their bargain" and paid a price premium for Products that were worth less than the natural, non-synthetic products they were promised.

81.    Under Cal. Civ. Code § 1782, on November 24, 2025, counsel for Plaintiff sent Defendant a notice letter via certified mail, notifying Defendant of these

-24-

CLASS ACTION COMPLAINT

violations. Because Defendant has failed to provide an appropriate remedy or cure its deceptive conduct on a class-wide basis within 30 days of receipt, Plaintiff and the Subclass now seek all available remedies under the CLRA, including actual damages, restitution, punitive damages, and attorneys' fees.

**SECOND CLAIM FOR RELIEF**
**Violation of California's False Advertising Law**
**California Business & Professions Code § 17500, *et seq***
***(For the California Class)***

82. Plaintiff repeats the allegations contained in paragraphs 1-70 above as if fully set forth herein.

83. Plaintiff brings this claim individually and on behalf of the members of the proposed California Class against Defendant pursuant to California's False Adverting Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*

84. The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

85. Defendant has violated the FAL by disseminating uniform, unqualified front-label representations that the Products are "powered by plants," "Hypoallergenic," and contain "No Harsh Chemicals." Under the "reasonable consumer" test, these statements are likely to deceive the public into believing the Products are composed exclusively of natural, plant-based ingredients.

86. These Challenged Representations are "unambiguously deceptive" because they contain no qualifying language to inform consumers that the Products actually contain a significant array of synthetic, industrially-processed chemicals including manufactured citric acid (MCA), sodium citrate, glycerin,

-25-

CLASS ACTION COMPLAINT

benzisothiazolinone, potassium sorbate, sodium benzoate, sodium percarbonate, tetrasodium iminodisuccinate, sodium hydroxide, polysorbate 20, ethylhexylglycerin, and xanthan gum.

87.     Defendant knew, or by the exercise of reasonable care should have known, that its Challenged Representations claims were untrue and misleading because Defendant chose to formulate the Products with mass-produced synthetic ingredients rather than the natural extracts implied by the marketing.

88.     Plaintiff and the California Class have standing to bring this claim because they lost money or property as a result of Defendant's FAL violations. Specifically, they relied on Defendant's false advertising to their detriment by paying a price premium for a product they believed was natural and non-synthetic.

89.     As a direct result of Defendant's false advertising, Defendant has obtained, and continues to obtain, unlawful profits at the expense of Plaintiff and the California Class. Plaintiff therefore requests that the Court: (a) enjoin Defendant from continuing these deceptive practices; (b) order the restitution of all money fraudulently obtained; and (c) order the disgorgement of profits earned through these transactions

90.     Plaintiff and the California Class will be irreparably harmed without an injunction, as Defendant continues to sell the Products using deceptive labels that prevent Plaintiff from making informed purchasing decisions in the future.

### THIRD CLAIM FOR RELIEF
**Violation of California's Unfair Competition Law ("UCL"),
California Business & Professions Code § 17200, *et seq.*
(*For the California Class*)**

91.     Plaintiff repeats the allegations contained in paragraphs 1-70 above as if fully set forth herein.

-26-

CLASS ACTION COMPLAINT

92. Plaintiff brings this claim individually and on behalf of the members of the proposed California Class against Defendant pursuant to California Business & Professions Code § 17200.

93. The UCL, Cal. Bus. & Prof. Code § 17200, provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising[.]"

94. Defendant's conduct is "unlawful" because it violates the CLRA (Cal. Civ. Code § 1750, et seq.) and the FAL (Cal. Bus. & Prof. Code § 17500, et seq.), as well as federal standards regarding the classification of synthetic ingredients. These violations serve as predicate acts for a finding of unlawfulness under the UCL.

95. Defendant's conduct is "unfair" because the gravity of the harm—deceiving parents into purchasing synthetic chemicals for their infants under the guise of natural safety—far outweighs any marginal utility of Defendant's conduct. Defendant's practice of charging a price premium for synthetic products labeled as "plant-based" offends established public policy and is immoral, unethical, and unscrupulous.

96. Defendant's conduct is "fraudulent" because its "Challenged Representations are likely to deceive a reasonable consumer. These unqualified claims create the false impression that the Products are free from synthetic chemicals, when they in fact contain manufactured citric acid (MCA), sodium citrate, glycerin, benzisothiazolinone, potassium sorbate, sodium benzoate, sodium percarbonate, tetrasodium iminodisuccinate, sodium hydroxide, polysorbate 20, ethylhexylglycerin, and xanthan gum.

97. Plaintiff and the California Class have standing to pursue this claim as they have suffered injury in fact and lost money or property as a direct result of Defendant's unlawful, unfair, and fraudulent business practices. Specifically, they paid a price premium they would not have paid had the Products been accurately labeled.

-27-

CLASS ACTION COMPLAINT

98.     Plaintiff and the California Class lack an adequate remedy at law for the future harm caused by Defendant's ongoing deceptive practices. While damages may compensate for past purchases, only an injunction can prevent Defendant from continuing to mislead Plaintiff and the public in the future.

99.     Plaintiff requests that the Court: (a) enjoin Defendant from continuing its deceptive business acts; (b) order restitution and disgorgement of all money unlawfully, unfairly, or fraudulently obtained; and (c) award any other relief the Court deems just and proper to restore the money paid by Plaintiff and the Class and to prevent irreparable harm.

**FOURTH CLAIM FOR RELIEF**
**Breach of Express Warranty**
**Cal. Com. Code § 2313**
(*For the California Class*)

100.     Plaintiff repeats the allegations contained in paragraphs 1-70 above as if fully set forth herein.

101.     Plaintiff brings this claim individually and on behalf of the members of the California Class against Defendant for breach of express warranty under Cal. Com. Code § 2313.

102.     California's express warranty statutes provide that "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Com. Code § 2313.

103.     Defendant has expressly warranted on the Products' labels, marketing, and advertising that the Products consist exclusively of plant-based ingredients. However, as alleged herein, these express representations are false and misleading. The Products do not conform to these affirmations of fact and descriptions because

-28-

CLASS ACTION COMPLAINT

they contain synthetic, industrially-produced ingredients including manufactured citric acid (MCA), sodium citrate, glycerin, benzisothiazolinone, potassium sorbate, sodium benzoate, sodium percarbonate, tetrasodium iminodisuccinate, sodium hydroxide, polysorbate 20, ethylhexylglycerin, and xanthan gum. Defendant's Challenged Representations on the Products' packaging and advertising are: (a) affirmations of fact or promises made by Defendant to consumers that the Products consist exclusively of plant-based ingredients; (b) became part of the basis of the bargain to purchase the Products when Plaintiff and other consumers relied on the representations; and (c) created an express warranty that the Products would conform to the affirmations of fact or promises. By selling Products that contain synthetic, non-plant-based chemicals, Defendant delivered non-conforming goods.

104.   Plaintiff and members of the California Class reasonably and justifiably relied on the foregoing express warranties, believing that the Products did in fact conform to those warranties. Had the Products not contained these express warranties, Plaintiff and the Class would not have purchased them or would have paid significantly less for them.

105.   Defendant has breached the express warranties made to Plaintiff and members of the California Class by failing to provide Products that conform to the "plant-based" and "natural" descriptions used in the Products' marketing and advertising.

106.   Plaintiff and members of the California Class paid a premium price for the Products but did not obtain the full value of the Products as represented. The measure of damages for this breach is the difference between the value of the Products as warranted and the actual value of the non-conforming Products delivered. Upon discovery of this breach, on November 24, 2025, Plaintiff, through the undersigned counsel, notified Defendant of its breach of warranty by way of a notice letter. Defendant has failed to cure the breach, despite having a reasonable opportunity to do so.

CLASS ACTION COMPLAINT

**FIFTH CLAIM FOR RELIEF**
**Breach of Implied Warranty**
**Cal. Com. Code § 2313**
(*For the California Class*)

107.    Plaintiff repeats the allegations contained in paragraphs 1-70 above as if fully set forth herein.

108.    Plaintiff brings this claim individually and on behalf of the members of the California Class against Defendant for breach of the implied warranty of merchantability.

109.    California's implied warranty of merchantability statute provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1).

110.    Under California law, for goods to be merchantable, they must at least "conform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(f).

111.    Defendant is a merchant with respect to the sale of the Products. Therefore, a warranty of merchantability is implied in every contract for the sale of the Products to California consumers.

112.    Defendant breached the implied warranty of merchantability because the Products do not conform to the prominent promises and affirmations of fact made on their containers and labels—specifically, that the Products are "powered by plants," "Hypoallergenic," and contain "No Harsh Chemicals."

113.    Because the Products contain synthetic, industrially processed ingredients including manufactured citric acid (MCA), sodium citrate, glycerin, benzisothiazolinone, potassium sorbate, sodium benzoate, sodium percarbonate, tetrasodium iminodisuccinate, sodium hydroxide, polysorbate 20, ethylhexylglycerin, and xanthan gum, they fail to conform to the labeling promises. Consequently, the Products are not merchantable as labeled and do not possess the quality represented by Defendant.

-30-

CLASS ACTION COMPLAINT

114. Plaintiff and members of the California Class did not receive the goods as impliedly warranted by Defendant. If Plaintiff and members of the California Class had known the true nature of the Products' ingredients, they would not have purchased them or would not have been willing to pay the premium price associated with them.

115. As a direct and proximate result of Defendant's breach, Plaintiff and members of the California Class have suffered injury and are entitled to recover all damages afforded under the law, including the difference in value between the Products as warranted and the Products as actually received.

116. On November 24, 2025, Plaintiff, through the undersigned counsel, provided Defendant with notice of the breach. Defendant has failed to remedy the breach despite having a reasonable opportunity to do so.

## SIXTH CLAIM FOR RELIEF
### Quasi Contract/Unjust Enrichment/Restitution
### (*for the Nationwide Class; alternatively, for the California Class*)

117. Plaintiff repeats the allegations contained in paragraphs 1-70 above as if fully set forth herein.

118. Plaintiff brings this claim individually and on behalf of the Nationwide Class, or in the alternative, on behalf of the California Class. This claim is pleaded in the alternative to Plaintiff's contract-based claims.

119. As alleged herein, Defendant has intentionally and recklessly made misleading representations to Plaintiff and members of the Classes to induce them to purchase the Products. Plaintiff and members of the Classes have reasonably relied on the misleading representations and have not received the benefits promised by Defendant—specifically, Products composed of natural, plant-based ingredients. Defendant's Challenged Representations were false because the Products contain synthetic, industrially produced ingredients including manufactured citric acid (MCA), sodium citrate, glycerin, benzisothiazolinone, potassium sorbate, sodium benzoate, sodium percarbonate, tetrasodium iminodisuccinate, sodium hydroxide,

-31-

CLASS ACTION COMPLAINT

polysorbate 20, ethylhexylglycerin, and xanthan gum.

120. Plaintiff and members of the proposed Classes have conferred a substantial benefit upon Defendant by purchasing the Products at a premium price. Defendant has retained these monies at the expense of Plaintiff and the Classes.

121. The monies received were obtained under circumstances that are inequitable and unjust—i.e., Plaintiff and members of the proposed Classes paid for a premium natural product but received a cheaper, synthetic alternative. It is against the fundamental principles of justice, equity, and good conscience for Defendant to retain the profits and benefits conferred upon it by its deceptive conduct.

122. As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and members of the proposed Classes are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant from its deceptive, misleading, and unlawful conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the proposed Classes, respectfully prays for the following relief:

A. Certification of this case as a class action on behalf of the proposed Classes defined above, appointment of Plaintiff as Class representative, and appointment of her counsel as Class Counsel;

B. A declaration that Defendant's actions, as described herein, violate the claims described herein;

C. An injunction or other equitable relief enjoining Defendant from continuing the unlawful, unfair, and fraudulent business practices alleged herein, including a permanent injunction requiring Defendant to cease the use of "powered by plants," and "Hypoallergenic" claims on Products containing synthetic ingredients;

D. An award to Plaintiff and the proposed Classes of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all

-32-

CLASS ACTION COMPLAINT

profits and unjust enrichment that Defendant obtained from Plaintiff and the proposed Classes as a result of its unlawful, unfair and fraudulent business practices described herein;

E.   An award of all economic, monetary, actual, consequential, and compensatory damages caused by Defendant's conduct;

F.   An award to Plaintiff and her counsel of reasonable expenses and attorneys' fees pursuant to Cal. Civ. Code § 1780(e), Cal. Code Civ. Proc. § 1021.5, and other applicable laws;

G.   A An award to Plaintiff and the proposed Classes of pre and post-judgment interest, to the extent allowable; and

H.   For such further relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and the proposed Classes, hereby demands a jury trial with respect to all issues triable of right by jury.

DATED: April 1, 2026

**TREEHOUSE LAW, LLP**

By: /s/ *Joseph Hakakian*

Joseph Hakakian (SBN 323011)
Benjamin Heikali (SBN 307466)
Ruhandy Glezakos (SBN 307473)
Joshua Nassir (SBN 318344)
3130 Wilshire Blvd. Suite 555
Santa Monica, CA 90403
Telephone: (310) 751-5948
jhakakian@treehouselaw.com
bheikali@treehouselaw.com
rglezakos@treehouselaw.com
jnassir@treehouselaw.com

*Attorneys for Plaintiff and the Putative Classes*

-33-

CLASS ACTION COMPLAINT